IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Mark Weimerskirch, et al.,            Case No. 3:11cv00302

           Plaintiffs

     v.            ORDER

Patriot Services Corp.

           Defendant

      Defendant Patriot Services Corporation (Patriot) challenges the joinder of plaintiff Joe Parker to this suit, which plaintiffs Mark Weimerskirch and Impact America, LLC (Impact), Weimerskirch's employer, originally brought against Patriot. Plaintiffs were each named subcontractors on a bid defendant submitted to the West Virginia School Building Authority (WVSBA). They claim to have suffered a variety of damages resulting from defendant's failure to retain their services once WVSBA awarded it the contract.

      Weimerskirch and Impact are Ohio citizens, and Patriot a Michigan citizen, rendering the original parties diverse. Plaintiffs seek to join Parker, a Michigan resident, to the suit, which would destroy diversity. Pending is plaintiffs' motion to remand. [Doc. 23].

      For the following reasons, I find Parker was fraudulently joined to this suit. Thus, this court properly still has diversity jurisdiction over the claims between Weimerskirch/Impact and Patriot.

**Factual Background**

1

In May, 2010, the West Virginia State Purchasing Division solicited proposals on behalf of the WVSBA for school vulnerability and safety assessments for schools in that state. The Request for Quotation (RFQ) stated that any contract awarded "becomes effective on award and extends for a period of three (3) years or until such 'reasonable time' thereafter as is necessary to obtain a new contract or renew the original contract. The 'reasonable time' period shall not exceed twelve (12) months." [Doc. 26-1, at 6].

Plaintiffs aided Patriot in submitting a bid for the WVSBA contract, serving as subcontractors for certain services. The bid designated Weimerskirch as a potential Project Manager and Parker as a potential Planning Team Leader. The bid was the only written memorialization of any potential relationship between the parties.

While the WVSBA bid was pending, members of Patriot's staff represented both verbally and via e-mail that they would attempt to complete the project "in as little as one year." [Doc. 35-3, at 2]. Patriot representatives e-mailed Parker on November 16, 2010, informing him that, before work began, the parties would have to "sit down and go over a contract" defining the conditions of employment "with each of the subcontractors involved on [the] project." [Doc. 26, at 7; Doc. 35, at 9].

WVSBA awarded the security assessment contract to Patriot on December 13, 2010. Patriot began discussing plaintiffs' roles in performing the awarded contract. The parties did not reach any written agreement and Patriot opted to use other subcontractors to perform its obligations.

Plaintiffs Weimerskirch and Impact sued defendant Patriot in the Common Pleas Court of Lucas County, Ohio, on January 11, 2011. Defendant timely filed a notice of removal with this court on February 11, 2011.

2

On May 16, 2011, plaintiffs filed an Amended Complaint adding Parker to the suit as an indispensable party. On January 20, 2012, plaintiffs filed a motion to remand, arguing that Parker and Patriot's shared citizenship defeated diversity in the case.

## STANDARD OF REVIEW

A defendant may remove any civil action in state court "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). After removal, a plaintiff may bring a motion to remand to state court under 28 U.S.C. § 1447(c).

The removing party bears the burden of showing that federal jurisdiction exists. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871-72 (6th Cir. 2000). I must grant Plaintiffs' motion to remand if I find that complete diversity jurisdiction or federal question jurisdiction does not exist. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Absent diversity of citizenship, federal-question jurisdiction is required" for proper removal to federal court).

Because removal jurisdiction raises significant concerns about federalism, I must resolve "[a]ll doubts regarding the removal petition . . . against removal." *City of Cleveland v. Deutsche Bank Trust Co.*, 571 F.Supp.2d 807, 811 (N.D. Ohio 2008) (citing *Queen ex rel. Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir.1989)).

## DISCUSSION

Plaintiffs' amended complaint does not clearly differentiate the relevant facts applicable to each party or the basis of each party's claimed damages. The complaint mentions Parker's claims only sporadically, with little to no indication of which facts apply to him and which do not. As a

general interpretative matter, I will assume all claims and the bases thereof for Weimerskirch apply equally to Parker, unless otherwise specifically noted in the Amended Complaint.

## A. Fraudulent Joinder

Defendant argues that Plaintiff fraudulently joined Parker, and I should dismiss him is a fraudulently joined plaintiff who should be dismissed from the case and thereby preserve diversity between the parties.

Where a party has removed a case from state to federal court, and the other party seeks to undo diversity by joining a non-diverse party, the removing party can "defeat a motion to remand if it can show that the non-diverse parties were fraudulently joined." *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (citing *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)). The non-moving party's motive for joining the challenged party is immaterial to this determination. *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999).

> There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law . . . . One or the other at least would be required before it could be said that there was no real intention to get a joint judgment, and that there was no colorable ground for so claiming.

*Walker v. Philip Morris USA, Inc.*, 443 Fed. Appx. 946, 951 (6th Cir. 2011) (unpublished disposition) (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir.1968)).

"[A]ny disputed questions of fact and ambiguities in the controlling state law [should be resolved] . . . in favor of the nonremoving party."[1] *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir.1994) (citing *Carriere v. Sears Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990)). In scrutinizing the pleadings, I am to determine whether, "as alleged, the facts would not have supported a cause of action under state law." *Walker*, *supra*, 443 Fed. Appx. at 952.

### 1. Breach of Contract/Statute of Frauds

Patriot contends that there was no written contract on which to base Parker's claim for breach, and that the statute of frauds bars any recovery, as the duration of the contract was to exceed one year. Parker responds by claiming that the bid itself constituted a binding written agreement between the parties, and that he actually had an oral agreement for a contract of less than one year based on representations from a member of Patriot's staff andan e-mail between that staff member and Weimerskirch.

### a. Subcontractor Bid as Offer

In the absence of a statute to opposite effect, it is a general rule that the incorporation of a subcontractor's bid in a general or primary contractor's bid does not create a contractual relationship between the general contractor and subcontractor on acceptance of the bid. *Rotondo Weirich Enters., Inc. v. Rock City Mech., Inc.*, 2006 WL 950188, *3 (E.D. Ky.) (citing *Finney Co., Inc. v. Monarch Const. Co., Inc.*, 670 S.W.2d 857, 859 (Ky. 1984)) (listing several states in which this is the established rule) (further citations omitted)). Likewise, Ohio courts have found that, on acceptance

---

[1] Plaintiffs make cursory mention of potential choice of law issues in their supporting reply brief for their motion to remand. With the exception of their deceptive trade practices claim, however, every claim in their complaint is lodged under Ohio law. I will conduct the fraudulent joinder inquiry under the state law plaintiffs use as the basis of their complaint.

of a contractor's general bid, the subcontractor's bid is simply an offer open for acceptance by the contractor, rather than a binding contract between the two. *Wargo Builders, Inc. v. Douglas L. Cox Plumbing & Heating, Inc.*, 26 Ohio App.2d 1, 2 (1971).

No contractual rights or remedies may arise from the mere use of a subcontractor's bid by a contractor in preparing its bid; there must be some other, subsequent agreement to create a legal relationship. Parker has not argued the existence of any other written agreement between him and Patriot. The parties agree that as of a month prior to WVSBA accepting Patriot's bid, they still needed to enter into a contract to define any potential employment relationship between them.

### b. Statute of Frauds

Parker argues that he is a party to the contract between Patriot and WVSBA, and that this contract is outside the statute of frauds because Patriot represented that it could complete the contract within a year's time.

Given that Parker's complaint, with the exception of this claimed statute of frauds exemption, is entirely premised on recovery from a breached contract lasting three years, I cannot find that the parties contemplated or entered into a different contract lasting a year or less.[2] Even were I inclined to do so, the parol evidence rule prohibits me from altering the underlying three-year contract between Patriot and WVSBA at the heart of this dispute. As stated in *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 440 (1996):

---

[2] Although I am to resolve factual disputes in favor of the nonremoving party, this is a unique situation in which the nonremoving party disputes its own facts. Plaintiffs argue both that they are entitled to recover damages for the full measure of a three-year contract and that they were parties to a contract of a year or less. Given the scope and measure of plaintiffs' claims and requested damages, treating this contract as if it were a year or less would do great damage to their complaint.

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

If Parker and Patriot had a contract, its purpose was to fulfill the WVSBA contract, which was to last three years. "The [statute of frauds] provision applies only to agreements which, by their terms, cannot be fully performed within a year; and not to agreements which may possibly be performed within a year." *Sherman v. Haines*, 73 Ohio St.3d 125, 127 (1995). The proffered statements by Patriot's representatives expressed a belief that the project could be completed within a year's time, but those statements were not sufficiently definite to determine that Patriot intended to enter into a contract of a year or less in duration. In any event, the three-year contract that the parties entered into speaks for itself as to how long the project was to last.

Parker has failed to present a colorable claim of breach of contract. Even had he done so, any such claim would be barred by the statute of frauds.

### 2. Third Party Beneficiary

Parker argues that he was an intended third-party beneficiary of the contract between Patriot and WVSBA.

"[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Huff v. FirstEnergy Corp.*, 957 N.E.2d 3, 6 (Ohio 2011) (quoting Rest. 2d of Contracts § 302). If the party has no intent to benefit the a third party, then that third party is simply an incidental beneficiary with no enforceable contractual rights. *Prince v. Kent State Univ.*, 2012 WL 831013, *4 (Ohio App.).

Parker's third-party beneficiary claim arises from the same nucleus of fact as his breach of contract claim. He argues that, because the bid to WVSBA allegedly included a contract for his services, he was by necessity a beneficiary of the ultimate contract which arose from the bid. As Parker had no contractual rights based on his initial subcontractor bid, he cannot be a third-party beneficiary of a contract entered into as a result of that bid.

Parker has failed to present a colorable claim for rights as a third-party beneficiary.

### 3. Fraud/Misrepresentation

A claim for fraud, as stated in *Casey v. Reidy*, 180 Ohio App. 3d 615, 620-21 (2009), requires:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, justifiable reliance upon the representation or concealment, (f) a resulting injury proximately caused by the reliance.

Parker asserts two grounds for fraud:

1) Patriot misrepresented to WVSBA that Parker was designated as Planning Team Leader; and

2) Patriot misrepresented its own experiences and qualifications to WVSBA because it had no intent to use Parker as its Planning Team Leader.

These claims are not colorable for a simple reason: they are WVSBA's claims, not Parker's. Parker's argument is that Patriot made material misrepresentations to WVSBA that, in turn, caused WVSBA to award a contract to Patriot in which Parker was not a participant.

Standing to bring a fraud claim requires that plaintiff "demonstrate an injury in fact, which requires a showing that the party has suffered or will suffer a specific injury." *In re Estate of York*,

133 Ohio App.3d 234, 241 (1999). "Furthermore, the injury must be traceable to the challenged action, and the injury must likely be redressed by a favorable decision." *Eng. Technicians Assn. v. Ohio Dept. of Transp.*, 72 Ohio App.3d 106, 110–111 (1991).

Parker lacks standing to bring a fraud claim based on Patriot's alleged misrepresentations to WVSBA. The alleged injury, if there were any, was to WVSBA from its fraud-based award of a multi-million dollar contract. Redressing that injury would involve rescission of the contract, not awarding a significant portion of the contract's benefits to Parker.

Even if Parker had properly pled his fraud claim (because he was the target of the alleged fraud), his claim still would not be colorable. Because a subcontractor's bid in a contractor's general bid does not give rise to a contractual relationship, any material representation underlying the contract had no effect on Parker.

Parker has failed to present a colorable claim for fraud.

### 4. Unjust Enrichment/Quantum Meruit

Parker claims that Patriot's use of his work, without compensation, in securing the WVSBA contract unjustly enriched Patriot. His quantum meruit claim is based on the same argument.

I combine unjust enrichment and quantum meruit, as the elements of each are identical. *In re Sucholdoski*, 2011 WL 6155756, *2 (Ohio App. 2011). "A successful claim of unjust enrichment requires that: (1) a benefit has been conferred by a plaintiff upon a defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Bldg. Indus. Consultants, Inc. v. 3M Parkway, Inc.*, 182 Ohio App.3d 39, 46 (2009).

Parker argues that Patriot unjustly retained the benefit of his estimate, and demands compensation for his efforts. As I have previously addressed, this does not give rise to an unjust enrichment claim. *Andersons, Inc. v. Consol, Inc.,* 185 F.Supp.2d 833, 838 (N.D. Ohio 2001) (holding that subcontractors do not have a valid claim for unjust enrichment based on the use of their names and work in preparing a bid). The contractor/subcontractor relationship during the bidding process gives rise to neither a contractual nor a quasi-contractual relationship.

Parker has failed to present a colorable claim for unjust enrichment/quantum meruit.

### 5. Intentional Infliction of Emotional Distress

Parker claims that Patriot intentionally inflicted emotional distress on him by failing to retain him as Planning Team Leader. To prove intentional infliction of emotional distress, a plaintiff must show, per *Pyle v. Pyle*, 11 Ohio App.3d 31, 34 (1983):

> 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community". . . ; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it[.]"

Patriot had no duty to retain Parker as Planning Team Leader. Patriot's decision not to retain Parker following its winning bid for the WVSBA contract was perfectly consistent with its established legal rights and traditional industry practice. Whatever Parker's arguments as to the other elements of this test, a company exercising a recognized right to not bring its bid subcontractors on board for the final project cannot be "beyond all possible bounds of decency" or "utterly intolerable in a civilized community."

Parker has failed to present a colorable claim for intentional infliction of emotional distress.

### 6. Tortious Interference with a Contractual/Business Relationship

Parker alleges that Patriot's refusal to hire him after WVSBA awarded it the contract tortiously interfered with his contractual and business relationships with All Hands Consulting and McKinley, two other subcontractors used in the bidding process.

"The elements of the tort of tortious interference with contract are: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Kademian v. Marger*, 2012 WL 762316, *20 (Ohio App. 2012) (further citation omitted).

Parker had no contract with Patriot during the bidding process. The same is true for all other subcontractors with regard to both Patriot and each other. The lack of a contract negates Parker's claim for interference with a contractual relationship.

> The elements essential to recovery for a tortious interference with a business relationship are:
>
> (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom."*Id*. "The main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract.

*Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 604 (2002).

Mere interference with a business relationship is not tortious in and of itself. The interference must be improper, and to determine that, I must look to:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Gracetech Inc. v. Perez*, 2012 WL 589473, *6 (Ohio App. 2012).

A contractor's ability to decide whether to retain the subcontractors who aided in preparing a bid is an inherent part of the bidding process, and one that the law protects. There can be no improper interference with a prospective contractual relationship when the party allegedly interfering is the one with whom the contract would ultimately be made. A stranger to the business relationship, which is what Parker was, has no basis for complaining or recovering from a party to the contract.

Parker's complaint is that he did not enter into a contract with Patriot that would have placed him in a similar contractual position to other subcontractors. The relevant potential contractual relationship is thus not between Parker and other subcontractors, but between each subcontractor and Patriot. Patriot's decision not to enter into a contract cannot be a tortious interference with its own contractual relations.

Parker has failed to present a colorable claim for tortious interference with either his contractual or business relations.

### 7. Breach of Fiduciary Duty

Parker argues that a joint venture or partnership was formed when Patriot solicited his and other subcontractors' services, and that the joint venture or partnership gave rise to a fiduciary duty on Patriot's part.

A fiduciary is "a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." *Groob v. KeyBank*, 108 Ohio St.3d 348, 351 (2006). A fiduciary duty forms when "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Id.* Parties may create that duty informally "if both parties understand

that the special trust has been reposed." *Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein*, 176 Ohio App.3d 54, 75 (2008).

As there was no contractual relationship between the parties, the only manner in which a fiduciary duty could have been formed is through the mutual understanding of the parties that special trust reposed in Patriot for the benefit of Parker. Parker has pled no set of facts, even taken in the light most favorable to him, that show Patriot's intent to act primarily for his benefit in bidding for and obtaining the WVSBA contract.

Parker has failed to demonstrate the existence of a fiduciary duty or colorable claim for a breach thereof.

### 8. Constructive Trust

Parker argues that Patriot's retention of income from the WVSBA contract is wrongful, and asks me to impose a constructive trust on any such income.

"A constructive trust arises by operation of law against one who through any form of unconscionable conduct holds legal title to property where equity and good conscience demands that he should not hold such title." *Dixon v. Smith*, 119 Ohio App. 3d 308, 319 (1997). Parker's sole assertion is that Patriot's retention of the money paid as a result of the WVSBA contract is "wrongful." But he gives no independent reasons why such retention is so. As Parker's other claims against Patriot are not colorable, he has identified no unconscionable conduct sufficient to obtain a remedy against Patriot.

Parker has failed to plead a colorable claim giving rise to a constructive trust.

### 9. Accounting

Parker seeks an accounting of Patriot's payments to its current subcontractors and any income derived from the WVSBA contract. As this is either a discovery request or a request for a permissive remedy for breach of a fiduciary duty, *DiPasquale v. Costas*, 186 Ohio App.3d 121, 151 (2010), it is not a colorable claim.

### 10. Promissory Estoppel

Parker claims that Patriot is estopped from denying him the benefits of the WVSBA contract based on the alleged promise that it would hire Parker as the project's Planning Team Leader. As a result of reliance on this alleged promise, Parker claims that he forewent other opportunities for employment.

A promissory estoppel claim requires a plaintiff to show: "(1) a clear and unambiguous promise, (2) reliance by the party to whom the promise was made, (3) [that] the reliance was reasonable and foreseeable, and (4) the party relying on the promise was injured by the reliance." *Prince*, *supra*, 2012 WL 831013, *8 (Ohio App. 2012).

The contractor/subcontractor relationship does not give rise to a contractual relationship between the parties. Nor, by extension, does it give rise to a promise of future employment or future entitlement to a contractual relationship. Patriot made no promise to Parker, let alone a clear and unambiguous promise, that it would employ him as Planning Team Leader if WVSBA awarded it the contract.

Parker has failed to present a colorable promissory estoppel claim.

### 11. Deceptive Trade Practices

Even assuming Parker had a colorable claim under contract or quasi-contract law, he has pled no set of facts leading to an even remotely colorable claim under Ohio's Deceptive Trade Practices

Act. ORC § 4165.02. There is no indication that Patriot passed off the goods or services of the subcontractors it is using as those of Parker, that it caused any likelihood of confusion or misrepresentation as to any element of the goods and services it is providing to the WVSBA, or has made any other false representation in the course of performing its contracted duties.

Parker alternately alleges violation of West Virginia's corresponding provisions. W. Va. Code § 46A-6-101(7). This claim likewise fails for lack of any relevant facts that would form a colorable claim under the statute.

Parker has failed to present a colorable claim that Patriot engaged in deceptive business practices.

## CONCLUSION

Parker has failed in each of his thirteen claims to present any colorable claim under Ohio or, where applicable, West Virginia law. Because his complaint lacks any colorable claim, I find that he was fraudulently joined to this lawsuit.

For the foregoing reasons, it is hereby:

ORDERED THAT:

1. Plaintiff Joe Parker be dismissed from this case; and
2. Plaintiffs' motion to remand this case to Ohio state court [Doc. 23] be, and the same hereby is denied.

So ordered.

s/James G. Carr<br>Sr. United States District Judge