# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Mark Weimerskirch, et al.,                                   Case No. 3:11CV302

         Plaintiffs

    v.                                                              **ORDER**

Patriot Services Corporation,

         Defendant

      This case concerns the nature of the relationship between plaintiffs Mark Weimerskirch and

Impact America and defendant Patriot Services Corporation (Patriot) arising from a successful bid

by defendant to obtain a school security assessment contract with the West Virginia School Building

Authority (WVSBA). Defendant was the primary contractor on the bid, and designated plaintiff

Weimerskirch as its project manager for the purposes of bidding. Following WVSBA's acceptance

of the bid, defendant and plaintiff could not come to terms on Weimerskirch's employment contract.

Defendant terminated the relationship. Plaintiffs then sued, and allege ten claims relating to

defendant's failure to retain Weimerskirch as project manager.

      Jurisdiction is proper under 28 U.S.C. § 1332.

      Pending is defendant's motion for summary judgment. [Doc. 45].

1

For the following reasons, I grant defendant's motion.

**Background**[1]

In May, 2010, the West Virginia State Purchasing Division solicited proposals on behalf of the WVSBA for school vulnerability and safety assessments for West Virginia schools. The Request for Quotation (RFQ) stated that any contract awarded "becomes effective on award and extends for a period of three (3) years or until such 'reasonable time' thereafter as is necessary to obtain a new contract or renew the original contract. The 'reasonable time' period shall not exceed twelve (12) months."

Plaintiff Weimerskirch, an Ohio resident, aided Patriot, a Michigan corporation, in submitting a bid for the WVSBA contract, serving as a subcontractor for certain services. The bid designated Weimerskirch as the potential Project Manager. The bid was the only written memorialization of any potential relationship between the parties.

While the WVSBA bid was pending, members of Patriot's staff represented both verbally and via e-mail that they would attempt to complete the project "in as little as one year." Patriot representatives e-mailed Weimerskirch on November 16, 2010, informing him that, before work began, the parties would have to "sit down and go over a contract" defining the conditions of employment "with each of the subcontractors involved on [the] project." Weimerskirch submitted three proposals to Patriot between November 11, 2010 and December 5, 2010, each proposing a different structure for a contractual payment agreement between the parties. Patriot did not agree to any of Weimerskirch's proposals.

---

[1] I previously laid out the background of this case in my prior opinion denying joinder of Joe Parker to this suit. *See Weimerskirch v. Patriot Servs. Corp.,* 2012 WL 1068888 (N.D. Ohio).

On December 13, 2010, WVSBA awarded the security assessment contract to Patriot. Patriot began discussing plaintiffs' roles in performing the awarded contract. The parties did not reach any written agreement and Patriot opted to use other subcontractors to perform its obligations.

Plaintiffs Weimerskirch and Impact sued defendant Patriot in the Common Pleas Court of Lucas County, Ohio, on January 11, 2011. Defendant timely filed a notice of removal with this court on February 11, 2011.

### Standard of Review

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

### Discussion

As a preliminary matter, plaintiffs allege no injury to or claim for Impact America. At no

3

point does plaintiff allege that Impact America played any specific role in preparing or submitting the bid, that Impact America was involved in any actual or proposed contractual relationship with defendant, or that Impact America has suffered any harm from the events at issue in this suit.

I therefore grant summary judgment to defendant on all claims relating to plaintiff Impact America.

Plaintiff Weimerskirch[2] presently alleges ten claims: breach of contract, promissory estoppel, unjust enrichment/quantum meruit, fraud, breach of fiduciary duty, entitlement to benefits as a result of being a third-party beneficiary, tortious interference with contractual and business relationships, intentional infliction of emotional distress, deceptive trade practices, and a claim to a constructive trust. Plaintiff also raises a question of choice of law between Michigan and Ohio law.

I first address the choice of law question, then each claim in turn.

## A. Choice of Law

"Ohio choice of law rules mandate that the law of the state with the more significant relationship to the contract should govern disputes arising from it." *Nat'l Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir. 1992)**.** Ohio has adopted the test set forth in the Rest. 2d Conflict of Laws § 188. *Nationwide Mut. Ins. Co. v. Ferrin*, 21 Ohio St.3d 43, 44-45 (1986). It states:

> (2) In the absence of an effective choice of law by the parties . . . the contacts to be taken into account in applying the principles of Section § 6 to determine the law applicable to an issue include:
>
> > (a) the place of contracting,
> > (b) the place of negotiations of the contract,
> > (c) the place of performance,
> > (d) the location of the subject matter of the contract, and

---

[2] As there is only one plaintiff at issue in this case at this point, all references to "plaintiff" from this point forward will refer to the sole remaining plaintiff, Weimerskirch.

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Rest. 2d Conflict of Laws § 6 contains the following principles:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

    (a) the needs of the interstate and international systems;
    (b) the relevant policies of the forum;
    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
    (d) the protection of justified expectations;
    (e) the basic policies underlying the particular field of law;
    (f) certainty, predictability, and uniformity of result; and
    (g) ease in the determination and application of the law to be applied.

The relevant contract alleged here is an agreement between the parties – one based in Ohio, the other in Michigan – to bid on and, if the bid were successful, perform a contract in West Virginia. The relevant state laws, then, are Michigan and Ohio, as they are the potential sites for the formation and execution of the alleged agreement. Although the parties (mainly defendant) would carry out the contract with the WVSBA in West Virginia, the agreement between the parties was more closely tied to their respective home states. As such, I will not apply West Virginia law.

Defendant does not disagree with the application of Ohio law, and I applied Ohio law in my prior opinion finding that plaintiff sought to fraudulently join Joe Parker to this suit. *Weimerskirch, supra*, 2012 WL 1068888 at *3 n.1. The same conclusion is warranted here.

During the bidding process, plaintiff was in Ohio. Neither party designated a particular choice of law governing a potential contractual agreement between them. Patriot, as the general contractor on the project, brought together numerous subcontractors from multiple states to work

on this project. As the experienced party overseeing the project, Patriot have had it within its power to require that Michigan law govern all of its relationships. That it did not do so weighs in favor of the laws of the states of the subcontractors applying to any claims arising from the relationship.

Ohio law applies to plaintiff's claims.

### B. Breach of Contract

Plaintiff now contends that he and defendant entered into a joint venture together, rather than a contractor/subcontractor relationship as he claimed in his original complaint.

"A joint venture arises from a contractual association of parties with the common purpose of carrying out a single business venture for their mutual profit, for which they combine their efforts, property, money, skill and knowledge without creating a partnership or a corporation." *Kahle v. Turner*, 66 Ohio App.2d 49, 52 (1979) (citing *Ford v. McCue*, 163 Ohio St. 498 (1955)).  Some combination of the following qualities must be present in a joint venture:

> contributions of effort, property, skill, knowledge and . . . other assets to . . . (the) common undertaking; a joint property interest in the subject matter of the venture and a right of mutual control or management of the enterprise; expectation of profits . . . ; [and] a right to participate . . . (therein) . . . .

*Id*. (quoting 46 American Jurisprudence 2d 27-28, Joint Ventures, §7).

Plaintiff cites a slightly different definition of a joint venture, which explicitly differentiates him from a subcontractor: "Joint venture partners must be responsible for a clearly defined portion of the work to be performed, as well as share in the ownership, risks, and profits of the joint venture. Moreover, unlike subcontractors, joint venture partners are parties to the bid." *S.A. Healy Co. v. Wash. Metro. Area Transit Auth.*, 615 F. Supp. 1132, 1338 n.9 (D.D.C. 1985) (citations and internal quote marks omitted).

Plaintiff's argument fails for three reasons. The first is his admission, in an effort to remove

6

this alleged contract from the Statute of Frauds, that the position was of "indefinite duration" and that the person holding that position "could be dismissed from the project at any time." [Doc. 52, at 20]. If defendant could dismiss plaintiff at any time, plaintiff had no right of mutual control or management of the enterprise or to participate therein. To hold otherwise would be to potentially turn any contractor's at-will employment relationship into a joint venture.

The second reason is plaintiff's continued efforts in 2010 to reach a contractual agreement as to the scope and form of his compensation. Both parties made clear from their course of conduct that no agreement entitling plaintiff to any expectation of profits from a successful bid existed between them at the time WVSBA awarded defendant the contract.

The third reason is that plaintiff was a subcontractor for defendant. Plaintiff argues that he was not a subcontractor, as the application for the bid listed "project manager" as a position separate from other subcontractors. The particular identification requirements a bid recipient places on solicited bids cannot change the nature of the relationship between the bidding parties. Defendant consistently referred to plaintiff as a subcontractor while plaintiff attempted to negotiate with it, a characterization plaintiff never disputed.

In the absence of a statute to opposite effect, it is a general rule that the incorporation of a subcontractor's bid in a general or primary contractor's bid does not, on acceptance of the bid, create a contractual relationship between the general contractor and subcontractor. *Rotondo Weirich Enters., Inc. v. Rock City Mech., Inc.*, 2006 WL 950188, *3 (E.D. Ky.) (citing *Finney Co., Inc. v. Monarch Const. Co., Inc.*, 670 S.W.2d 857, 859 (Ky. 1984)) (listing several states in which this is the established rule) (further citations omitted)). Likewise, Ohio courts have found that, on acceptance of a contractor's general bid, the subcontractor's bid is simply an offer open for

acceptance by the contractor, rather than a binding contract between the two. *Wargo Builders, Inc. v. Douglas L. Cox Plumbing & Heating, Inc.*, 26 Ohio App.2d 1, 2 (1971).

Plaintiff, at the time defendant won the WVSBA contract, had nothing more than an open offer that defendant could choose to accept or reject. Defendant's rejection of the offer does not give rise to a breach of contract, as no contract existed.

I grant summary judgment to defendant on plaintiff's breach of contract claim.

### C. Statute of Frauds

Plaintiff argues that he is a party to the contract between defendant and WVSBA, and that the contract falls outside of the Statute of Frauds because he was either an at-will employee terminable at any time, or because the contract could have been completed within a year.

As previously discussed, plaintiff was a subcontractor rather than an at-will employee. The normal provision that an employment agreement of indefinite duration or dependent upon a contingency that may or may not happen within one year is outside the statute of frauds does not apply here. *See Kennedy v. Conrad*, 2004 WL 177424 (Ohio App.) (unpublished disposition).

Plaintiff also argues that an e-mail proposing that defendant could possibly complete the project in as little as a year takes the contract between it and WSVBA (and therefore any contractual benefit owed to plaintiff) outside of the statute of frauds.

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 440 (1996).

Plaintiff seeks to recover for a purported share of a contract between two other parties that, by its terms, was to last three years. An e-mail that was not integrated into the contract - and

8

contradicts the terms of the contract - cannot suffice to alter its terms or entitle plaintiff to recovery.

The Statute of Frauds bars plaintiff from claiming that he was party to the contract between defendant and WVSBA.

### D. Promissory Estoppel

Plaintiff claims that defendant promised him the position of project manager, and that it is estopped from denying him the benefits of that position.

A promissory estoppel claim requires a plaintiff to show: "(1) a clear and unambiguous promise, (2) reliance by the party to whom the promise was made, (3) [that] the reliance was reasonable and foreseeable, and (4) the party relying on the promise was injured by the reliance." *Prince v. Kent State Univ.*, 2012 WL 831013, *8 (Ohio App. 2012).

Plaintiff was defendant's subcontractor, and so the only promise between the parties was that defendant would consider plaintiff's offer of his services, which defendant was free to accept or reject. That plaintiff was involved in preparing the bid does not entitle him to proceeds from the contract resulting from the bid's success; it is a risk inherent in serving as a subcontractor.

I grant defendant summary judgment on plaintiff's promissory estoppel claim.

### E. Unjust Enrichment/Quantum Meruit

Plaintiff argues that, even in the absence of a contract, he is entitled to recover on an unjust enrichment theory because his work in preparing the bid conferred a benefit onto defendant, a benefit for which he was uncompensated.

"A successful claim of unjust enrichment requires that: (1) a benefit has been conferred by a plaintiff upon a defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant

retained the benefit under circumstances where it would be unjust to do so without payment." *Bldg. Indus. Consultants, Inc. v. 3M Parkway, Inc.*, 182 Ohio App.3d 39, 46 (2009).

Subcontractors do not have a valid claim for unjust enrichment based on the use of their names and work in preparing a bid. *Andersons, Inc. v. Consol, Inc.,* 185 F.Supp.2d 833, 838 (N.D. Ohio 2001). Plaintiff can therefore not recover for unjust enrichment, as defendant was not and could not have been unjustly enriched.

I grant summary judgment to defendant on plaintiff's unjust enrichment/quantum meruit claim.

### F. Fraud

Plaintiff claims he was defrauded by defendant's false representation that he was to be the project manager if the bid were accepted by WVSBA.

A claim for fraud, as stated in *Casey v. Reidy*, 180 Ohio App. 3d 615, 620-21 (2009), requires:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, justifiable reliance upon the representation or concealment, (f) a resulting injury proximately caused by the reliance.

As is customary in a contractor's bid, defendant named certain parties, including plaintiff, as prospective subcontractors. That identification did not constitute a representation that plaintiff would in fact be the subcontractor on the project if WVSBA accepted the bid, because that identification does not bind either party to the arrangement absent further contractual agreement.[3]

---

[3] Plaintiff's insistence that he was actually an at-will employee negates virtually all of his claims, but particularly his fraud claim. By definition, an employer can dismiss an at-will employee

10

Defendant cannot have defrauded plaintiff when defendant made no representation upon which plaintiff should have relied.

I grant summary judgment to defendant on plaintiff's fraud claim.

### G. Breach of Fiduciary Duty

Plaintiff claims that, because he and defendant were joint venture partners, they violated their fiduciary duty to him in the course of the joint venture.

A fiduciary is "a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking. " *Groob v. KeyBank*, 108 Ohio St.3d 348, 351 (2006). A fiduciary duty forms when  "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Id.* Parties may create that duty informally "if both parties understand that the special trust has been reposed." *Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein*, 176 Ohio App.3d 54, 75 (2008).

Plaintiff and defendant were not involved in a joint venture, but instead in a nascent prospective contractor/subcontractor relationship. Even taken in the light most favorable to plaintiff, he has failed to show that there was any enforceable relationship or contract, whether express or understood, between the parties.

I grant summary judgment to defendant on plaintiff's breach of fiduciary duty claim.

### H. Third-Party Beneficiary Status

---

at any time. If plaintiff legitimately believes that he was an at-will employee, then the treatment he claims was fraudulent - removing him from the project when defendant felt they could not reach a continued agreement on his employment - was entirely consistent with his employment status.

11

Plaintiff claims that when defendant submitted its bid, it did so intending to benefit him as a partner in the bid, and he was therefore a third-party beneficiary to the contract.

Where a promisee intends to benefit a third party, that party is an intended beneficiary and so has a claim to recover under the contract. *Norfolk & Western Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980).

Defendant never intended to benefit plaintiff, as they were not partners in a joint venture. A contractor's submission of a bid is not an indication of intent to benefit the subcontractors, it is an indication that certain subcontractors may work on the project if the bid is accepted and the contractor agrees to terms with the subcontractors. There can be no intent to benefit a third party when any benefits arising from the contract upon acceptance of the bid when the contractor will only distribute them following further negotiation as to the structure of their distribution, and may refuse to include a previously identified subcontractor in their distribution.

I grant summary judgment to defendant on plaintiff's third-party beneficiary claim.

## I. Tortious Interference with Contractual
## and Business Relationships

Plaintiff claims that defendant had contractual relationships with both him and two other subcontractors: All Hands and McKinley. Because defendant did not retain plaintiff's services, he claims that defendant tortiously interference with his contractual and business relationships with the other subcontractors.

 "The elements of the tort of tortious interference with contract are: '(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages.'" *Kademian v. Marger*, 2012 WL 762316, *20 (Ohio App. 2012) (further citation omitted).

12

A contract did not exist. Defendant cannot have interfered with a nonexistent contract.

The elements essential to recovery for a tortious interference with a business relationship are:

(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. The main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract.

*Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 604 (2002).

Mere interference with a business relationship is not tortious in and of itself. The interference must be improper, and to determine that, I must look to:

(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Gracetech Inc. v. Perez*, 2012 WL 589473, *6 (Ohio App. 2012).

To argue this claim, plaintiff now states that defendant had a joint venture with *all* of the named subcontractors – even the ones explicitly listed as subcontractors on the bid to WVSBA. The business relationship between the parties, such as it was, consisted of subcontractors offering their services to a contractor in order to build a competitive bid. As has been stated previously, those bids were offers, subject to acceptance, rejection or further negotiation by defendant. Defendant's decision to refrain from bringing plaintiff or any other subcontractor on the project was not a tortious interference with business relations. This is so because defendant retained the right to refrain from entering into a contract with its subcontractors and, by extension, to keep them from contracting with each other on the project it oversaw.

I grant summary judgment to defendant on plaintiff's tortious interference claims.

13

## J. Intentional Infliction of Emotional Distress

Plaintiff claims that he suffered severe emotional distress as a result of defendant's actions, and suffered a related heart attack on October 22, 2010.

To prove intentional infliction of emotional distress, a plaintiff must show, per *Pyle v. Pyle*, 11 Ohio App.3d 31, 34 (1983):

> 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community". . . ; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it[.]"

The "extreme and outrageous" standard is an exceptionally high one. Even tortious or criminal intent may not be enough. *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousement & Helpers of America*, 6 Ohio St.3d 369, 374-75 (1983). "To say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement." *Baab v. AMR Servs. Corp.*, 811 F.Supp. 1246, 1269.

Defendant, within its rights, declined to retain plaintiff as its project manager. It cannot be "utterly intolerable in a civilized community" for a contractor to exercise the discretion in its business relationships that a civilized community has afforded it.

I grant summary judgment to defendant on plaintiff's claim for intentional infliction of emotional distress.

## K. Deceptive Trade Practices

Plaintiff claims that defendant violated Ohio's Deceptive Trade Practices Act, O.R.C. § 4165.02. Plaintiff's assertion that defendant did so is conclusory – he offers no specific facts to show

14

that defendant has violated any part of the Act, whether by passing off the goods and services it is currently using as plaintiff's, causing any likelihood of confusion or misrepresentation as to the goods and services it is providing WVSBA, or making other false representations in the course of its contractual duties.

I grant summary judgment to defendant on plaintiff's claim for deceptive trade practices.

### L. Constructive Trust

Plaintiff asks that I form a constructive trust to protect the relevant assets at issue in this dispute until the dispute is resolved. As I am granting defendant's motion for summary judgment on all counts, there is no need to form such a trust, as this order resolves the dispute *in toto*.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

Defendant's motion for summary judgment [Doc. 45] be, and the same hereby is granted.

So ordered.

s/James G. Carr
Sr. United States District Judge